UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANNA WURTZBURGER,

                              Plaintiff,

    -v-

EVERETT KORET, JERRY FLORY, JAMY FLORY, and FLORY CORP.,

                              Defendants.

No. 16-CV-7897 (KMK)

OPINION & ORDER

---

Appearances

Pamela J. Gabiger, Esq.
Poughkeepsie, NY
*Attorney for Plaintiff*

Jaclyn G. Goldberg, Esq.
Lance H. Klein, Esq.
Arin M. Liebman, Esq.
Keane & Beane, P.C.
White Plains, NY
*Attorneys for Defendants*

KENNETH M. KARAS, District Judge:

       Anna Wurtzburger ("Plaintiff") filed this Action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, against Everett Koret ("Koret"), Jerry Flory, Jamy Flory, and Flory Corp., (collectively "Defendants"), alleging that Defendants discriminated against her on the basis of her age when she was denied employment with Flory Corp. in May 2016. (*See* Compl. (Dkt. No. 1).) Before the Court is Defendants' Motion for Summary Judgment. (Notice of Mot. For Summ. J. (Dkt. No. 33).) For the following reasons, the Motion is granted.

I. Background

A. Factual History

The following facts are taken from the documents submitted and Defendants' Statement of Undisputed Facts pursuant to Local Civil Rule 56.1.[1] The facts as described below are undisputed, except to the extent indicated.

Plaintiff, a resident of Dutchess County, applied for employment at Flory Corp. on May 17, 2016. (*See* Defs.' Statement of Undisputed Facts ("Defs.' 56.1") ¶¶ 4, 35 (Dkt. No. 38).) Plaintiff was born in 1952, making her approximately 63 or 64 years old at the time she submitted her application. (*See id.* ¶ 5.) Prior to seeking employment with Flory Corp., Plaintiff had frequented the establishment in Hopewell Junction, New York, often to "get gas or cigarettes or buy something from the deli." (Decl. of Jaclyn G. Goldberg, Esq. in Supp. of Mot. for Summ. J. ("Goldberg Decl.") Ex. B ("Wurtzburger Dep.") 60 (Dkt. No. 34); *see also* Defs.' 56.1 ¶ 32.) On May 17, 2016, Plaintiff saw a sign in the window that said "help wanted . . . in the deli." (Wurtzburger Dep. 58.) Upon seeing the help wanted sign, Plaintiff approached Koret, the manager at the Hopewell Junction Flory Corp. location, and said that she was interested in working for Flory Corp. in the available position in the deli. (*Id.* at 58.) According to Plaintiff,

---

[1] Plaintiff failed to submit any counterstatement to Defendants' Statement of Undisputed Facts, and therefore has failed to answer Defendants' Rule 56.1 statement. As such, she concedes the truth of the statements made therein unless they are clearly controverted by the record. *See* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."); *O'Keefe v. Arbon Equip. Corp.*, 399 F. Supp. 2d 478, 482 (S.D.N.Y. 2005) ("Courts in th[e] [Second] Circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party." (internal quotation marks omitted)).

she informed Koret that she always saw "young faces behind [the deli counter]," and said that she "need[ed] a job because [her] husband died." (*Id.*) Plaintiff states that Koret said he had "a huge stack of people giving [him] applications [he] ha[d] to look through," (*id.* at 58), and Koret then gave Plaintiff an application for employment, (*see* Goldberg Decl. Ex. C ("Koret Dep.") 64). Plaintiff left the premises with the application in hand, and then returned to the Flory Corp. location at Hopewell Junction that same day to submit her application. (*See id.* at 64–65; Wurtzburger Dep. 18, 57.) Plaintiff's application only listed her last name, "Wurtzburger," and indicated that she had graduated from Walton High School in Bronx, New York in 1979. (Aff. of Everett Koret ("Koret Aff.") Ex. A ("Employment Application") (Dkt. No. 36).) Plaintiff also represented that her last employment was in "205" at Fishkill Correctional Facility, where she was a "CNA." (*Id.*) Before that, Plaintiff represented that she worked for "Chef's Vincent Rest." from "85–200" as a "waitress-manager, cook." (*Id.*)[2] The employment application did not ask for age or date of birth, but did ask for an applicant's education record, including graduation dates. (*Id.*)

After submitting her application, Plaintiff and Koret had "[t]hree or four conversations" discussing the status of her application for employment as a deli worker at Flory Corp. (Koret Dep. 69.) On one such occasion, Plaintiff informed Koret that "she needed th[e] job because her house was in foreclosure and she wanted a chance to prove that she was able to do the job." (*Id.*

---

[2] The Court notes that Plaintiff's employment application was admittedly inaccurate. First, Plaintiff graduated from Walton High School in 1969, not 1979. (*See* Wurtzburger Dep. 137–38.) Second, Plaintiff worked at Chef Vincent's from 1985 to 1998, not until 2000 as listed on the application. (*See id.* at 30.) Third, Plaintiff omitted her employment between her time at Chef Vincent's and Fishkill Correctional Facility, including five months of employment at Wal-Mart, and employment as a nurse's aid from 2000 to 2002 at Wingate of Dutchess and St. Francis. (*See id.* at 11, 25, 54.) It is unclear from the record whether Plaintiff worked at both locations during this period, or switched at some point therein. Finally, Plaintiff's term of employment at Fishkill began in 2002, not 2000, as listed on her application. (*See id.* at 28.)

at 68.) Plaintiff also told Koret that she knew he did not want to hire her because she was old, (*id.* at 70; Wurtzburger Dep. 97), though Koret denies giving any response to her question, (Koret Dep. 70). At one point, Koret informed Plaintiff that there might be an opening in another store in East Fishkill, though he never learned what occurred after she visited that store and spoke to the manager. (*See id.* at 69.)

Koret reviewed Plaintiff's application in the normal course to determine whether Plaintiff was qualified for the position at the deli. (*See id.* at 93.) According to Koret, his process is to "[p]ool the applications, go through the applications to see who is eligible for an interview, go through the interview process, and then again, use [his] best judgment after doing the interview on who [he] feel[s] is the best candidate." (*Id.* at 47.) The hiring decision rested entirely with Koret, as Jerry and Jamy Flory did not provide Koret with any input regarding who should be hired. (*See* Defs.' 56.1 ¶ 22.) Ultimately, Koret decided not to hire Plaintiff for the open deli position, (*see* Koret Dep. 81), nor did he consider her for any other employment at Flory Corp., (*see id.* at 87). Koret testified that he chose not to hire Plaintiff for myriad reasons, which include, "[that] [her] application was incomplete, past experiences that [he] ha[d] witnessed between her and [his] staff, [and] her appearance in regard to . . . cat hair on her shirt." (*Id.* at 81.) Koret noted that there was information on her application that "wasn't filled out," including that "her first name wasn't even on [the application], and the dates for her job history w[ere] not complete." (*Id.*) As to prior interactions with the staff at the Hopewell Junction location, Koret testified that he witnessed "some conversations . . . where [Plaintiff] was interacting with other employees and constantly always complaining and negative with them," and that Plaintiff "was not very nice to [the] cashiers." (*Id.* at 82–83.)

Koret also recalled a specific incident in late 2011 or early 2012 that was a major reason that Plaintiff was not hired. (Koret Dep. 82–83.) The Parties agree that Plaintiff's husband purchased a salad at the Hopewell Junction location of Flory Corp. (*See* Wurtzburger Dep. 83–84.) Plaintiff noticed that the expiration date on the salad had passed, so she brought it back. (*See id.* at 83–84.) The owner took the salad back from Plaintiff and apologized to her for the oversight. (*See id.* at 84.) From there, the record is disputed. Plaintiff does not recall whether the owner simply refunded her for the cost of the salad or if she received some other form of compensation, (*see id.*); however, she is certain that she did not say that she would take the salad back if the owner was planning to throw it away, (*see id.*). By contrast, both Koret and Jerry Flory recall Plaintiff asking for the spoiled salad back once Jerry Flory proceeded to throw the salad in the garbage. (*See* Koret Dep. 82, 95; Defs.' 56.1 ¶¶ 56–57.) According to Koret, this incident was a "red flag" and a "big [reason]" why Plaintiff was not hired to work in the deli, as her conduct raised "concerns of food safety and what she may or may not provide [the] customers with." (Koret Dep. 95.)

Moreover, during the aforementioned salad incident, Koret and Jerry Flory contend that Plaintiff's shirt was covered in cat hair. (*See* Koret Dep. 81; Jerry Flory Aff. In Supp. of Mot. for Summ. J. ("Jerry Flory Aff.") ¶ 9 (Dkt. No. 35).) Koret recalled this incident upon reviewing Plaintiff's application in 2016. (*See* Koret Dep. 81.) Plaintiff denies that she ever wore clothing that was covered in cat hair, (Aff. in Opp'n to Mot. for Summ. J. ("Pl's Opp'n") ¶¶ 5–6. (Dkt. No. 39)), and Defendants agree that Plaintiff disputes the occurrence of this incident, (*see* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") 15 (Dkt. No. 37)).

As previously noted, Plaintiff was not hired by Defendants for any position. Plaintiff contends that she did not receive a job because of her age, as Koret "would hire only young

people." (Wurtzburger Dep. 19.) Plaintiff came to this conclusion because, "every time [she] walked in there, there was [sic] always young people working behind the counter," and that there was "only one [employee] that . . . could be in his fifties," but otherwise did not perceive anyone who worked at the store to be over forty years old. (*Id*. at 88, 104.) However, Plaintiff never asked anyone who worked at Flory Corp. how old they were, and her conclusion regarding the ages of the employees at Flory Corp. was merely based on her perceptions of how old they looked. (*See id.* at 105; *see also id.* at 19 ("[E]ven a blind person could see that . . . he never had any woman there over 30, never.").)

Yet, at the time of the filing of this Action in September 2, 2016, Defendants employed eight employees between the ages of 41 and 68. (Defs.' 56.1 ¶ 14.) Defendants further note that "over the last ten (10) years, prior to the filing of the Complaint, Flory Corp. has hired thirty-seven (37) employees who, at the time of hiring, were over forty (40) years of age." (*Id.* ¶ 17; *see also* Koret Aff. Ex. B ("Flory Corp. Employee Birthday Listing").) According to Defendants' data, at least nine of Defendants' current active employees are over the age of 40. (*See* Flory Corp. Employee Birthday Listing.)

B. Procedural History

Plaintiff filed her Complaint on September 1, 2016 in the Supreme Court of the State of New York, County of Dutchess. (*See* Compl.) On October 10, 2016, Defendants filed a Notice of Removal, (*see* Notice of Removal (Dkt. No. 1)), and subsequently filed an Answer to Plaintiff's Complaint on October 17, 2016, (*see* Answer (Dkt. No. 4)). On March 15, the Court adopted a discovery schedule. (*See* Case Management Order (Dkt. No. 10).)

On October 16, 2017, the Court held a pre-motion conference and adopted a briefing schedule. (*See* Mot. Scheduling Order (Dkt. No. 27).) In response to letters submitted by the

Parties regarding the issue of exhaustion, (*see* Dkt. Nos. 28–29, 31), the Court adopted a revised schedule, (*see* Order (Dkt. No. 32)). In accordance with this schedule, Defendants filed their Motion for Summary Judgment and accompanying papers on December 15, 2017. (*See* Dkt. Nos. 33–38.) On January 14, 2018, Plaintiff filed an "Affirmation" in opposition to Defendants' Motion, which appears to be Plaintiff's Opposition brief. (*See* Pl.'s Opp'n.) As noted, Plaintiff failed submit any counterstatement to Defendants' Statement of Undisputed Facts. Defendants filed their Reply to Plaintiffs' opposition on February 9, 2018. (*See* Defs.' Reply in Supp. of Mot. for Summ. J. ("Defs.' Reply") (Dkt. No. 41).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come

7

forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Instead, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks

8

omitted). However, a district court should consider "only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

B.  Analysis

1.  Failure To Exhaust ADEA Claim

As an initial matter, Defendants argue that Plaintiff's ADEA and NYSHRL claims must be dismissed because "Plaintiff failed to file a mandatory charge with the U.S. Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights ("NYSDHR")." (Defs.' Mem. 2.)

Under the ADEA, a claimant may bring suit in federal court only if he or she has filed a complaint with the EEOC "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing [an employment discrimination claim] in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."); *Anderson v. Royal Realty Corp.*, No. 14-CV-6797, 2014 WL 6908971, at *2 (E.D.N.Y. Dec. 8, 2014) (same); *Spruill v. N.Y.C. Health & Hosp.*, No. 06-CV-11362, 2007 WL 2456960, at *2 (S.D.N.Y. Aug. 23, 2007) ("A plaintiff must exhaust his administrative remedies with the EEOC or an authorized agency before filing . . . ADEA claims in federal court."), *aff'd* 367 F. App'x 269 (2d Cir. 2010). "Exhaustion of administrative remedies through the EEOC is an essential element of the . . . ADEA statutory scheme[] and, as such, a precondition to bringing such claims in federal court."

*See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks omitted).

It is clear that Plaintiff failed to exhaust her claim with the EEOC. When asked if "[p]rior to filing th[is] lawsuit, did [Plaintiff] file any type of complaint with the Equal Employment Opportunity Commission," Plaintiff admitted that she had not. (Wurtzburger Dep. 6.) In fact, Plaintiff had never heard of the EEOC and testified that this Action is "the first formal complaint [she] made about [Defendants] and [her] lack of being hired." (*Id.*) Plaintiff attempted to file a Charge of Discrimination with the EEOC on November 9, 2017—more than 400 days after filing this Complaint, (*see* Goldberg Decl. Ex. G ("November 2017 EEOC Charge")), and this EEOC Charge was dismissed as untimely on November 21, 2017, (*see id.* Ex. H ("Dismissal and Right to Sue")). Accordingly, it is clear from the record that Plaintiff has not adequately exhausted her ADEA claims, and thus those claims are procedurally barred.

However, the Second Circuit has held that "the exhaustion of administrative remedies is a precondition to bringing [an employment discrimination claim] claim in federal court, rather than a jurisdictional requirement." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015) (internal quotation marks omitted); *see also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (same). Accordingly, "a plaintiff's failure to exhaust is subject to equitable defenses." *Mahamadou v. 1199 SEIU United Healthcare Workers E.*, No. 15-CV-7439, 2016 WL 3566235, at *3 (S.D.N.Y. June 24, 2016). One such equitable defense is equitable tolling. *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003) ("The filing deadline for the formal complaint is not jurisdictional and, like a statute of limitations, is subject to equitable tolling."). Under federal law, equitable tolling of the statute of limitations is applied "only in 'rare and exceptional circumstances,' where . . . 'extraordinary

circumstances' prevented a party from timely performing a required act." *DeRaffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *11 (S.D.N.Y. Mar. 30, 2016) (alteration in original) (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)). "Equitable tolling is generally not available where the circumstances that a plaintiff claims prevented h[er] from timely filing were within the plaintiff's control." *Myers v. New York*, No. 14-CV-1492, 2016 WL 2636295, at *5 (N.D.N.Y. May 9, 2016) (citing *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001)). Furthermore, "[w]hen determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80–81 (internal quotation marks omitted). "To secure equitable tolling, it is not enough for a party to show that [s]he experienced extraordinary circumstances. [She] must further demonstrate that those circumstances caused h[er] to miss the original filing deadline." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *see also Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) ("[T]o benefit from equitable tolling, a litigant must allege that extraordinary circumstances prevented him from acting in a timely manner." (internal quotation marks omitted)). It is Plaintiff's burden to prove that tolling is appropriate. *See Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)

Plaintiff is not entitled to any tolling here. As an initial matter, Plaintiff is represented by counsel, and has been represented by counsel since she filed this case in New York State court in September 2016. "[A] want of diligence by a plaintiff's attorney generally will not prompt a court to provide relief from a limitations period by way of an equitable toll." *Id.*; *see also*

*Smaldone,* 273 F.3d at 138 ("This Circuit, like her sisters, has found attorney error inadequate to create the 'extraordinary' circumstances equitable tolling requires."); *Gemmill v. Westchester Jewish Ctr.*, No. 11-CV-4821, 2012 WL 1871590, at *3 (S.D.N.Y. Apr. 30, 2012) ("The law in the Second Circuit is clear that if an individual is represented by counsel at any time during the period in which the statute of limitations runs, there can be no equitable tolling." (citing *Keyse v. Cal. Tex. Oil Corp.,* 590 F.2d 45, 47 (2d Cir. 1978))). Plaintiff's counsel simply failed to comply with the statutory scheme set forth by the ADEA. Defendants alerted Plaintiff and her counsel of the exhaustion requirements on multiple occasions, including when they filed their Answer on October 17, 2016, (*see* Answer ¶ 22), when they requested a copy of the EEOC complaint during discovery, (*see* Defs.' 56.1 ¶ 72), and when they asked whether Plaintiff had filed such a charge with the EEOC at her deposition on August 1, 2017, (Wurtzburger Dep. 6).

Plaintiff's claim that this Action was unwittingly filed by counsel in the "wrong forum," (Pl.'s Opp'n ¶ 13), is no excuse. Such attorney errors do not warrant equitable tolling. *See Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) ("[N]ormal errors made by attorneys may not justify equitable tolling."); *Walker v. Graham*, 955 F. Supp. 2d 92, 103 (E.D.N.Y. July 2, 2013) ("[E]rroneous advice of a licensed attorney[ ] does not qualify as an extraordinary circumstance warranting equitable tolling."); *Hill v. United States*, No. 09-CV-1692, 2010 WL 4365572, at *6 (D. Conn. Oct. 22, 2010) (holding that "[the attorney's] misunderstanding is unfortunate, but it cannot excuse [the] [p]laintiff's late filing"); *Colon-Rodriguez v. N.Y.C. Dep't of Corr.*, No. 07-CV-8126, 2009 WL 995181, at *10 (S.D.N.Y. Apr. 13, 2009) ("[A]n attorney's mistake or even negligence does not constitute the extraordinary and rare circumstance that provides a basis for equitable tolling." (internal quotation marks omitted)); *Davila v. Barnhart*, 225 F. Supp. 2d 337, 339 (S.D.N.Y. 2002) ("[A]ttorney error or

miscalculation is not one of the rare circumstances in which equitable tolling is permissible."); *Smaldone v. Senkowski*, No. 99-CV-3318, 2000 WL 1134391, at *5 (E.D.N.Y. Aug. 3, 2000) (noting that "courts have . . . rebuffed claims for equitable tolling . . . based on attorney error" and collecting cases in habeas context), *aff'd*, 273 F.3d 133 (2d Cir. 2001); *accord Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 62 (D.C. Cir. 2014) (noting that "the [plaintiff's] own missteps" did not constitute an "extraordinary circumstance"), *aff'd*, 136 S. Ct. 750 (2016). Notably, this case does not present an instance where Defendants misled Plaintiff in any way, *cf. Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 743 (E.D.N.Y. 2015) (explaining that "the statute of limitations may be tolled" where "the defendant actively misled the plaintiff" (internal quotation marks omitted)); indeed, it was *defense counsel* who repeatedly informed Plaintiff of the administrative exhaustion issue, (*see* Defs.' 56.1 ¶ 72). Plaintiff's counsel failed to act upon this information for more than a full year—well past the statutory deadline. (November 2017 EEOC Charge; Dismissal and Right to Sue.)

Accordingly, in the absence of any equitable defenses to her failure to exhaust, Plaintiff's ADEA claim must be dismissed.

### 2. NYSHRL Claims

Plaintiff's NYSHRL claims, unlike her ADEA claims, are not limited by any administrative exhaustion requirement. *See Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, No. 12-CV-2285, 2014 WL 5822628, at *23 (E.D.N.Y. Nov. 6, 2014); *Arias-Zeballos v. Tan*, No. 06-CV-1268, 2006 WL 3075528, at *6 (S.D.N.Y. Oct. 26, 2006) (same). Indeed, N.Y. Exec. Law § 297(9) provides a right of action against unlawful discriminatory practices, and "by the terms of the statute . . . the NY[S]HRL . . . claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." *York v. Ass'n of Bar of City of New*

13

*York*, 286 F.3d 122, 127 (2d Cir. 2002). Effectively, a plaintiff may choose to go before a state court or pursue administrative remedies, but cannot proceed with both.

However, because Plaintiff's NYSHRL claim arises under state law, and because there is no diversity of citizenship between the parties, jurisdiction over Plaintiff's NYSHRL claim is supplemental. *See* 28 U.S.C. § 1367(c)(3). "Federal courts may exercise jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)). The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (internal quotations omitted). "District courts weigh several factors in determining whether to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these values, courts look to 'the circumstances of each particular case.'" *Id.* at 391–92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

The analysis of Plaintiff's age discrimination claim under the NYSHRL would be identical to conducting a merits analysis of his unexhausted claims under the ADEA. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6 (2d Cir. 2010) ("The law governing ADEA claims has been held to be identical to that governing claims made under the NY[S]HRL."). To allow Plaintiff to proceed on those identical state claims after the Court has dismissed the corresponding ADEA claims due to Plaintiff's failure to exhaust "would

14

essentially allow [Plaintiff] to get the claims into this Court through the courthouse's back door." *Crespo v. N.Y.C. Transit Auth.*, No. 01-CV-671, 2002 WL 398805, at *10 (E.D.N.Y. Jan. 7, 2002); *see also Kemp v. City of New York Dep't of Health*, No. 16-CV-1080, 2017 WL 5468311, at *5–6 (E.D.N.Y. Feb. 4, 2017) (declining to exercise supplemental jurisdiction over state law claims that mirrored the plaintiff's unexhausted federal discrimination claims); *Mayo-Coleman v. Am. Sugar Holding, Inc.*, No. 14-CV-79, 2015 WL 4393778, at *2 (S.D.N.Y. July 17, 2015) (same); *Madray v. Long Island Univ.*, No. 10-CV-3841, 2012 WL 2923500, at *13 (E.D.N.Y. July 16, 2012) (same); *Barriera v. Bankers Tr.*, No. 98-CV-3641, 2003 WL 22387099, at *9 (S.D.N.Y. Oct. 20, 2003) (same); *McNight v. Dormitory Auth. of State of N.Y.*, 995 F. Supp. 70, 81 (N.D.N.Y. 1998) ("To permit the state law claims to continue in federal court would enable plaintiff to circumvent the statutory administrative exhaustion requirements." (internal quotation marks omitted)). Accordingly, because the Court dismisses the federal claims against Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

### III. Conclusion

For the foregoing reasons, the Motion for Summary Judgment is granted as to Plaintiff's federal claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 33), and close this case.

Dated: May 11, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE